**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 23-42384-11** |
| | § | |
| **SPARTAN GROUP HOLDINGS,** | § | **Chapter 11** |
| **LLC,** | § | |
| | § | **Joint Administration Requested** |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **Case No. 23-42385-11** |
| | § | |
| **SPARTAN CONCRETE** | § | **Chapter 11** |
| **CONSTRUCTION, LLC,** | § | |
| | § | **Joint Administration Requested** |
| Debtor. | § | |

**COMMERCE CONSTRUCTION COMPANY, L.P.'S OBJECTION**
**TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER FACILITATING**
**SECTIONS 362(A) AND 542(A) OF THE BANKRUPTCY CODE**

Commerce Construction Company, L.P. (**"Commerce"**), an interested party, files its Objection to Debtors' Emergency Motion for Entry of Order Facilitating Sections 362(a) and 542(a) of the Bankruptcy Code (Doc. No. 18) (the **"Motion"**) and would show the Court as follows:

1.      Debtors filed their voluntary Chapter 11 Petitions on December 13, 2023.

2.      Debtors filed the Motion on December 18, 2023. An expedited hearing on the Motion was set for December 21, 2023.

3.      Commerce is a general contractor who currently has construction contracts with one of the Debtors, Spartan Concrete Construction, LLC (**"Spartan Concrete"**). True and correct copies of the contracts are attached to these Objections as Exhibits A and B (highlights have been added for the Court's reference).

1

4.      In the Motion and various other filings, Debtors contend that they have pre-petition receivables of more than $6.6 million. Debtors assert that some of those receivables may be owed to one or more Debtors by Commerce.

5.      Commerce objects to making any of the payments requested by Debtors in the Motion or any of the other "Day One" Motions to be heard on December 21, 2023. Debtors claim that Commerce has withheld payments of funds otherwise due to Debtors solely based on demands for payment received from various creditors of Debtors, including a group Debtors refer to as the "Factors" in the Motion. This claim is inaccurate for several reasons.

6.      First, the funds at issue are not due to Spartan Concrete or any other Debtor because it did not comply with its obligations under the construction contracts. In the contracts, Spartan Concrete agreed to perform concrete work on two projects.[1] *See* Subcontract Agreement dated December 6, 2022 for Silver Creek Building 2 Project at p. APP-002, ¶ A-B (**"Building Contract"**) (Ex. A); Subcontract Agreement dated March 21, 2023 for Silver Creek Road Improvements Project at p. APP-033, ¶ A-B (**"Road Contract"**) (Ex. B).

7.      Spartan Concrete agreed that time was of the essence in performing its obligations. Building Contract at p. APP-004, ¶ 7 (Ex. A). If Spartan Concrete failed to "properly and diligently prosecute the Work covered by this Subcontract," Spartan Concrete agreed that Commerce could employ other persons to finish the work under the contracts. *Id.* at ¶ 8. In that situation, Spartan Concrete is not entitled to any payment at all until its work under the contracts has been completed by Commerce and the supplemental contractors hired to perform Spartan Concrete's work. *Id.* If the expenses incurred to finish Spartan Concrete's scope of work exceed the difference between the

---

[1] The language relevant to these Objections is identical in both the Building Contract and the Road Contract. Given the expedited nature of these proceedings and in the interest of efficiency, Commerce will cite to the pertinent language in the Building Contract and can point out the identical language in the Road Contract at the hearing if needed.

agreed-upon total contract amounts and the amounts previously paid to Spartan Concrete (the **"Contract Balance"**), then Spartan Concrete would owe the difference to Commerce. *Id.*

8.      Spartan Concrete further agreed that any requested payments from Commerce could be withheld because of Spartan Concrete's failure to comply with the contracts' terms and conditions, unsatisfactory performance of the work, failure to remedy defective work, failure to pay Spartan Concrete's lower-tier subcontractors, and reasonable indications that Spartan Concrete could not perform its work on schedule. *Id.* at APP-007 ¶ 29(c). No payment is due until these issues have been remedied. *Id.* With respect to unpaid lower-tier subcontractors, Spartan Concrete expressly agreed that no payment was due unless and until Spartan Concrete furnished releases from the lower-tier subcontractors and/or documentation substantiating the amounts owed or paid as required by Commerce. *Id.*

9.      Spartan Concrete had other obligations under the contracts besides completing its work. For example, Spartan Concrete agreed to reimburse Commerce or the other subcontractors for losses resulting from delays caused by Spartan Concrete. *Id.* at p. APP-004 ¶ 8. Spartan Concrete agreed to furnish lien releases from all of its lower-tier subcontractors as a condition precedent to Commerce's obligation to make payments. *Id.* at p. APP-007 ¶ 29(b).

10.      Spartan Concrete promised that any funds it received from Commerce would be trust funds for the benefit of Spartan Concrete's lower-tier subcontractors, materialmen, and other contracting parties furnishing labor or materials for construction of the projects. *Id.* at ¶ 29(e). Spartan Concrete agreed to hold those funds in trust for the lower-tier subcontractors and to pay those entities first before applying the funds to any other purposes (including, for example, Spartan Concrete's own internal expenses or debts to its creditors). *Id.* Spartan Concrete also agreed to defend, indemnify, and hold harmless Commerce against claims by Spartan Concrete's lower-tier subcontractors for

3

nonpayment and/or enforcement mechanic's liens against the projects. *Id.* at p. APP-004-005 ¶ 11. Commerce is expressly authorized to withhold and recoup from any funds which might otherwise be due to Spartan Concrete any costs or damages incurred by Commerce to defend against such lower-tier subcontractors' claims. *Id.*

11.     Spartan Concrete would not be entitled to a payment from Commerce unless the total expenses incurred by Commerce to complete Spartan Concrete's work and satisfy its other obligations under the contracts are less than the Contract Balance. *Id.* at p. APP-004 ¶ 8 (Ex. A).

12.     With respect to the projects, Spartan Concrete has repeatedly breached its contracts with Commerce. Spartan Concrete did not complete its work on the projects. It has not performed work on the projects since early November 2023. Commerce was forced to hire another concrete contractor to supplement and finish the remaining scope of Spartan Concrete's work on the projects. A true and correct copy of correspondence notifying Spartan Concrete of the supplementation is attached as Exhibit C. The supplemental contractor is still in the process of performing that work, which remains incomplete at this time.

13.     Commerce has also received notices from various lower-tier subcontractors of Spartan Concrete that they did not receive payments for their work on the projects. Several of those subcontractors have filed affidavits asserting mechanic's liens against the projects. True and correct copies of several of the lien affidavits are attached as Exhibits D and E. Upon information and belief, Spartan Concrete requested and received payments for some of these lower-tier subcontractors, then diverted the funds to other purposes without paying them.

14.     Commerce also has received notice that Spartan Concrete has failed to maintain the insurance required under its contracts. Building Contract at p. APP-024 ¶ 1 (insurance policies must remain in force during the entire period of construction). It appears that Spartan Concrete could not

finish performing its work even if it had the resources to do so. A true and correct copy of the notice regarding the insurance is attached as Exhibit F.

15.     For all of these reasons, no payments are due to Spartan Concrete (or any other Debtors) at this time. Commerce disputes the contention that Commerce is "ready, willing, and able" to pay the full amount demanded by Debtors under the contracts. At present, the amount (if any) which may be due under the contracts to Spartan Concrete is contested. Commerce asks that the Court reject Debtors' unfounded demands for immediate turnover of funds to which they are not entitled without providing any of the due-process protections afforded to Commerce under the Bankruptcy Code and other applicable law.

16.     Second, if any funds become due under the contracts, at least some portion of those funds are trust funds for the lower-tier subcontractors protected under the Texas Trust Fund Act. TEX. PROP. CODE §§ 162.001, *et seq.* Such trust funds are not property of the Debtors' estate at all. They are currently held in trust by Commerce as a statutory trustee for the benefit of the unpaid lower-tier subcontractors under the Trust Fund Act. Commerce objects that granting the emergency order requested by Debtors would move the property of other parties (the lower-tier subcontractors) into the bankruptcy estate and then would subject them to dissipation by Debtors in their attempts to resuscitate their failing businesses rather than to pay the trust funds to the beneficiaries. This would, in turn, subject Commerce and the projects' owners to the risk and expense of litigating the various mechanic's lien claims that have been (and likely will be) asserted by Spartan Concrete's lower-tier subcontractors.

17.     Third, to the extent Commerce is holding any funds which might otherwise be due to Spartan Concrete, Commerce should be allowed to recoup from those funds all of the amounts incurred due to Spartan Concrete's violations of the contracts above.

18.     Finally, Commerce objects to Debtors' failure to meet their burden to demonstrate that they are entitled to any funds from Commerce, and the calculation of the amount of such funds.

19.     Debtors have filed "emergency" motions demanding orders that Commerce immediately pay funds to which Debtors are not entitled. There is no "emergency" here. Debtors have known for almost two months that they were not receiving any of their requested payments because they did not finish their work on the projects and did not pay their lower-tier subcontractors. Rather, Debtors wish to prejudice Commerce's rights under the Bankruptcy Code and the contracts by forcing immediate payment of amounts that Commerce does not owe to Debtors.

20.     For all of these reasons, Commerce objects to the Motion and requests that it be denied. In the alternative, Commerce requests that the Court continue the hearing on the Motion to allow sufficient time for Commerce to prepare a formal response to the Motion and present its evidence to the Court. Commerce also requests such other and further relief to which it may show itself justly entitled.

21.     In asserting these Objections, Commerce expressly reserves and does not waive its rights under the contracts and applicable law.

Respectfully submitted,

**GRIFFITH DAVISON, P.C.**

By: /s/ Jason L. Cagle
Scott Griffith
State Bar No. 08482150
sgriffith@griffithdavison.com
Jason L. Cagle
State Bar No. 24027540
jcagle@griffithdavison.com
Erin E. Fry
State Bar No. 24109895
efry@griffithdavison.com

13737 Noel Road, Suite 850
Dallas, Texas 75240

T: 972-392-8900
F: 972-392-8901

**ATTORNEYS FOR COMMERCE
CONSTRUCTION CO., L.P.**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 21, 2023 a true and correct copy of the foregoing Notice of Appearance and Request for Service of Notice and Other Documents was served upon all counsel of record via Court's CM/ECF electronic notification system or by U.S. First Class Mail, postage prepaid.

/s/ Jason L. Cagle
Jason L. Cagle