IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| SPARTAN GROUP HOLDINGS, LLC, *et al.*, | § § § § | Case No. 23-42384 |
| Debtors.[1] | § § | Jointly Administered |

**AGREED INTERIM ORDER
AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL,
GRANTING POST-PETITION LIENS, AND GRANTING RELATED RELIEF**

CAME ON FOR EMERGENCY HEARING the *Debtors' Emergency Motion for Interim and Final Use of Cash Collateral* (the "**Motion**"), filed by Spartan Group Holdings, LLC; Spartan Concrete Construction, LLC; Spartan Engineering Services, LLC; Spartan Equipment Leasing, LLC; Spartan Fabrication Services, LLC; Spartan Metals Distribution, LLC; Spartan Reinforcing, LLC; and Spartan Valley Chili Road, LLC (collectively, the "**Debtors**"), the debtors-in-possession in the above styled and numbered jointly administered bankruptcy case (the "**Bankruptcy Case**"), pursuant to which the Debtors seek authority to use Cash Collateral (as defined in 11 U.S.C. § 363(a)), including any Cash Collateral that stands as security for obligations owed by the Debtors to BMO Bank N.A., f/k/a BMO Harris Bank N.A. (the "**Senior Lender**"). By its counsel's signature below, the Senior Lender has consented to the limited use of Cash Collateral on an interim basis for the Interim Period (defined below), in accordance with and subject to the terms, provisions, and conditions of this Order, all other rights reserved.

---

[1] The debtors and the last four digits of the EINs are Spartan Group Holdings, LLC (5865), Spartan Concrete Construction, LLC (5378), Spartan Engineering Services, LLC (9172), Spartan Equipment Leasing, LLC (9972), Spartan Fabrication Services, LLC (1692), Spartan Metals Distribution, LLC (3800), Spartan Reinforcing, LLC (6811), and Spartan Valley Chili Road, LLC (1399).

AGREED INTERIM ORDER AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL, GRANTING POST-PETITION LIENS, AND GRANTING RELATED RELIEF

1

QB\630027.00847\86227840.5

On December 21, 2023, the Court conducted a hearing (the "**Hearing**") on the Motion and the Debtors' use of cash collateral. Based upon the Motion, the arguments and presentations of parties at the Hearing, the agreement of the Debtors and the Senior Lender, and good and sufficient cause appearing therefor,

**THE COURT FINDS AND CONCLUDES** as follows:

1. On or about December 13, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") thereby commencing the above-captioned Bankruptcy Cases.

2. The Court has jurisdiction over the Bankruptcy Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

7. On or about March 24, 2022, Senior Lender made a $15,000,000 revolving line of credit available to Spartan Holdings (the "**Holdings RLOC**"), which is evidenced by, among other documents and instruments, that certain *Loan and Security Agreement* dated as of March 24, 2022 (as amended, the "**RLOC Loan Agreement**"), as amended by that certain *First Amendment to Loan and Security Agreement* dated as of September 15, 2022, and by that certain *Forbearance and Modification Agreement* dated as of August 17, 2022 and the *First Amendment to Forbearance and Modification Agreement* dated October 17, 2023 (collectively, the "**Forbearance Agreement**"). The RLOC Loan Agreement, the Forbearance Agreement, and all other documents and instruments related to or delivered to Senior Lender in connection with the Holdings RLOC or Forbearance Agreement are collectively referred to herein as the "**RLOC Loan Documents.**"

8. Pursuant to Article 4 of the RLOC Loan Agreement, as security for the full, prompt and complete performance of the obligations owing to Senior Lender, each of the Debtors granted

to Senior Lender continuing first priority security interest in and lien on substantially all of the Debtors' assets, including, but not limited to all accounts, equipment, fixtures, money, cash, and cash equivalents, as well as all substitutions, replacements, products, and proceeds of any of the foregoing (as more particularly described in the Senior Loan Documents (defined below), the "**Senior Collateral**").[2]

9. In 2022, Senior Lender made available to Spartan Equipment Leasing, LLC ("**Spartan Equipment**") four (4) equipment loans (the "**Equipment Loans**"), evidenced by, among other things, that certain *Master Loan and Security Agreement* dated as of April 7, 2022 (as amended, the "**Equipment Loan Agreement**") and promissory notes executed and delivered by Equipment to Senior Lender (collectively, the "**Equipment Notes**").

10. Pursuant to, among other things, that certain *Commercial Security Agreement* dated as of October 13, 2022 (the "**Equipment Security Agreement**"), Spartan Equipment granted to Senior Lender a continuing first priority lien on and security interest in all right, title, and interest of Spartan Equipment in the "**Collateral**" (as defined in the Equipment Security Agreement"). The Equipment Loan Agreement, the Equipment Notes, the Equipment Security Agreement, and the Forbearance Agreement, and all other documents and instruments related to or delivered to Senior Lender in connection with or related to the Equipment Loans are collectively referred to herein as the "**Equipment Loan Documents.**" The RLOC Loan Documents and the Equipment Loan Documents are collectively referred to herein as the "**Senior Loan Documents**."

---

[2] The description in this order of Senior Lender's Senior Collateral is not exhaustive; Senior Lender's Senior Collateral may include other assets not described herein.

AGREED INTERIM ORDER AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL, GRANTING POST-PETITION LIENS, AND GRANTING RELATED RELIEF

3

QB\630027.00847\86227840.5

11. Each of the Debtors, among others, absolutely and unconditionally guaranteed the payment and performance of any and all obligations owing to Senior Lender under the Senior Loan Documents.

12. The Senior Collateral serves as security for repayment and performance of all obligations (the "**Senior Obligations**") owing to Senior Lender under the Senior Loan Documents, as and to the extent provided therein.

13. Senior Lender's first priority security interests in and liens on the portion of the Senior Collateral that constitutes personal property were perfected by, among other things, filing the following UCC-1 financing statements dated March 25, 2022 with the Texas Secretary of State (collectively, the "**Senior Financing Statements**"):

(a) Spartan Group Holdings LLC, file no. 00220015118222;
(b) Spartan Concrete Construction, LLC, file no. 00220015117958;
(c) Spartan Engineering Services LLC, file no. 00220015117695;
(d) Spartan Equipment Leasing LLC, file no. 00220015117837;
(e) Spartan Fabrication Services LLC, file no. 00220015118080;
(f) Spartan Metals Distribution LLC, file no. 00220015118101;
(g) Spartan Reinforcing, LLC, file no. 00220015118343; and
(h) Spartan Valley Chili Rd LLC, file no. 00220015118464.

B. The Debtors defaulted under the Senior Loan Documents, prepetition. Thereafter, the Debtors requested certain accommodations from Senior Lender, including that Senior Lender forbear from exercising its rights and remedies under the Senior Loan Documents and agree to the modification of certain provisions of the Senior Loan Documents.

C. The "**Forbearance Period**" as defined in the Forbearance Agreement terminated and/or expired prior to the Petition Date.

D. As of December 13, 2023, Senior Lender alleges that the amounts due and owing to Senior Lender by the Debtors includes the following principal amounts, and together with all

accrued and accruing interest (including default interest), costs, expenses, fees (including attorneys' fees and costs), and all other amounts chargeable under the Senior Loan Documents and applicable law (collectively, the "**Senior Indebtedness**"):

| | |
|---|---|
| RLOC Loan | $13,348,293.24 |
| Note 37697 | $107,510.43 |
| Note 38233 | $82,354.83 |
| Note 38417 | $255,731.86 |
| Note 38370 & 22341IF | $667,440.00 |
| Credit Card Balance | $30,863.29 |

E. Senior Lender and Debtors each allege and agree that Senior Lender holds valid and perfected first priority liens on and security interests in the Senior Collateral, which includes rents, profits, proceeds, and other revenues arising out of and related to the Senior Collateral and other cash and cash equivalent proceeds, which are "cash collateral" within the meaning of Bankruptcy Code § 363(a). The Senior Collateral that is owned by any of the Debtors and constitutes cash collateral will be referred to herein as the "**Cash Collateral**." The term "Cash Collateral" will expressly _not_ include any receivables or assets that are determined by the Court (or any other court of competent jurisdiction, if the automatic stay is modified to permit the same) to have been sold by any of the Debtors before the Petition Date such that such receivables or assets are determined not to be property of the Debtors' estates.[3] The Cash Collateral also secures repayment and performance of the Senior Obligations.

F. Certain "Factors" (as that term is defined in Docket No. 18) have also assert interests in the some of the Cash Collateral. The Debtors and Senior Lender dispute these interests,

---

[3] The Debtors reserve all right to argue that any assignment or transfer by the them of any receivable was a collateral assignment and not an outright assignment, such that the Debtors continue to own the receivable.

and, in all events, agree that any such interests are junior to Senior Lender's liens and security interests in the Cash Collateral and any Senior Collateral.

G. The Debtors have requested that Senior Lender consent to the interim use of Cash Collateral, and the Debtors have undertaken arm's-length negotiations with Senior Lender regarding limited use of Cash Collateral. Senior Lender is willing to allow the Debtors the limited use of Cash Collateral for a limited period, pursuant to the terms and conditions set forth in this Order.

H. Separate from the Senior Lender, it appears that one or more other alleged creditors may assert interests in cash collateral, or that they own certain of the Debtors' prepetition account receivables. To the extent that any such other creditors have valid, perfected, and enforceable security interests in the Cash Collateral, those interests are junior in priority to the Senior Lender and the Debtors are therefore authorized to use the same pursuant to this Order. Otherwise, all rights of all parties including the Senior Lender, the Debtors, and such other alleged creditors are preserved notwithstanding this Order.

I. The terms and conditions regarding the interim use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's-length, and the parties otherwise acted in good faith.

J. Except to the extent specifically provided herein, Senior Lender has not agreed to any other or further use of the Cash Collateral by the Debtors for any purpose or beyond the period set forth herein.

K. Notice and service of the Motion and of the Hearing was sufficient and appropriate and was provided by the Debtors to, among others, each of the Factors.

L.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  This Court concludes that approval under this Order is in the best interests of the Debtors' estate and its creditors.

M.      Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based on the foregoing, and the entire record before the Court, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.      **Authority to Use Cash Collateral**.  The Debtors may use Cash Collateral on an interim basis, only as provided in this Order.  If the Debtors fail to comply with the terms and conditions of this Order, the Debtors' authorization to use the Cash Collateral for any purpose, including the purposes set forth in this Order, is immediately terminated without further action.

2.      **Authorized Use of Cash Collateral**.  A copy of a short-term, emergency expense budget is attached as **Exhibit A** to this Order (the "**Budget**").  The Debtors have confirmed that no insiders will directly or indirectly receive any payments under the Budget, except for ordinary wages.  The Debtors' interim use of Cash Collateral is limited to payment of the ordinary and necessary postpetition expenses that are actually incurred, billed to the Debtors after the Petition Date and in the Budget (the "**Approved Expenses**").  Except as expressly provided in this Order, the Debtors may not use any Cash Collateral that would cause total payments to exceed any line-item stated in the Budget (with a 10% line-item variance during the period covered by this Order), unless Senior Lender consents in writing in advance of any such use.  Senior Lender's consent to the payment of the expenses in the Budget applies only to the period covered by this Order; Senior Lender reserves all its rights regarding future budgets (if any).  In no event shall Cash Collateral

be used to pay any pre-petition debts or obligations of any of the Debtors, except as may be otherwise ordered by the Court pursuant to separate order, with respect to which the Senior Lender reserves all of its rights, and further, unless Senior Lender otherwise agrees in writing, in no event shall Cash Collateral be applied or available to pay any administrative expenses of the types specified in § 503(b)(2),(3), (4), (5) or (6), provided, however, that nothing in this paragraph shall prevent the Debtors from paying quarterly fees to the United States Trustee; and in no event shall the Cash Collateral be used to challenge the extent, validity, or priority of the Senior Lender's liens, security interests, Senior Loan Documents, or the Senior Indebtedness, any proof of claim filed by the Senior Lender, or otherwise to commence an action or proceeding against the Senior Lender.

3. **Senior Lender Replacement Liens**. Notwithstanding anything in Bankruptcy Code § 552 to the contrary, and in addition to its liens and security interests under the existing Senior Loan Documents, Senior Lender will have and is hereby granted (effective and continuing without the necessity of the execution, filing and/or recordation of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or otherwise), *nunc pro tunc* to the Petition Date, valid and perfected priority security interests and liens (the "**Senior Replacement Liens**") in all of the Debtors' real and personal property of the types described in the Senior Loan Documents, including all such property generated or obtained after the Petition Date (collectively, the "**Senior Replacement Collateral**"). The Senior Replacement Liens in the Senior Replacement Collateral (i) will secure the full amount of the Senior Obligations owing to Senior Lender under the Loan Documents to the extent of any diminution in value in the Cash Collateral; (ii) will be evidenced by the existing Senior Loan Documents and this Order; and (iii) will have the same validity and priority as the Senior Lender's existing liens and security

interests under the Senior Loan Documents as of the Petition Date. The Senior Replacement Collateral does not include any avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, and 553(b) and any proceeds therefrom, except to the extent that such actions seek to recover property that is subject to Senior Lender's liens and security interests. In addition, Senior Lender will retain all of its existing liens and security interests in all of the Senior Collateral, including, without limitation, the liens and security interests described above and any rights of setoff, all of which will continue to encumber the Senior Collateral to full extent allowable by applicable non-bankruptcy law and 11 U.S.C. § 552, and to the same validity, priority, and extent as the Senior Lender's existing liens and security interests under the Senior Loan Documents as of the Petition Date.

4. **Perfection of Senior Replacement Liens.** The Senior Replacement Liens in the Senior Replacement Collateral granted hereby shall be valid, perfected, enforceable and effective against the Debtors and their successors and assigns, including any trustee or receiver in this or any superseding Chapter 7 case, without any further action by the Debtors or Senior Lender and without the execution, delivery, filing or recordation of any control agreements, promissory notes, financing statements, mortgages, security agreements or other documents. The Debtors acknowledge that Senior Lender may, but is not required to, file any financing statement to perfect the Senior Replacement Liens granted by this Order. The automatic stay under 11 U.S.C. § 362 is hereby modified to permit Senior Lender, in its sole discretion, to file this Order or any of the foregoing documents to give notice of such liens and security interests.

5. **Conditional Replacement Liens for Alleged Factors**. To the extent that the Court enters a final, non-appealable order finding that a Factor holds an interest in a portion of Cash Collateral (the "**Subject Cash Collateral**") that is superior in priority to Senior Lender's interest

AGREED INTERIM ORDER AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL, GRANTING POST-PETITION LIENS, AND GRANTING RELATED RELIEF
9

QB\630027.00847\86227840.5

in such Subject Cash Collateral, such Factor will have a replacement lien in the Cash Collateral but only to the extent of any actual diminution in value in the Subject Cash Collateral.

6. **Termination of Authority**. Unless extended further with the written consent of Senior Lender (confirmed by the entry of a further order of the Bankruptcy Court), the authorization granted to the Debtors to use Cash Collateral under this Order will automatically terminate upon the earliest of:

  i. the earlier to occur of: (i) December 27, 2023; or (ii) any later date that Senior Lender agrees upon in writing;

  ii. the date upon which any of the Debtors no longer is debtor in possession in the Bankruptcy Case or is otherwise limited or excluded from the management and operation of its business (through the appointment of a trustee or an examiner under the Bankruptcy Code, or through the appointment of some other type of fiduciary or custodian under federal or state law);

  iii. the date that any Debtor ceases to operate its businesses (without the prior written consent of Senior Lender);

  iv. the granting of relief from the automatic stay of 11 U.S.C. 362(a) to any party that claims an interest in any of the Senior Collateral or in any of the Senior Replacement Collateral other than the Senior Lender;

  v. the Court grants any party other than Senior Lender a lien or security interest equal or senior to the liens and security interests held by Senior Lender in the Senior Collateral and the Senior Replacement Collateral, unless otherwise expressly consented to by Senior Lender; or

vi.    any of the Debtors failing to comply with any of the terms of this Order.

(Any of the forgoing (i) - (vi) will be referred to as a "**Termination Event**").  Notwithstanding a Termination Event, the rights, claims, security interests, liens, and priorities of Senior Lender with respect to all transactions that occur prior to the occurrence of such Termination Event, including, without limitation, all liens and priority claims approved by this Order, will remain unimpaired and unaffected by any such termination, will survive any such termination, and will be binding upon any and all successors-in-interest to the Debtors, including any trustee that may be appointed in the Bankruptcy Cases.

7.    **Weekly Reports; Information**.  Commencing on December 29, 2023, and on the last day of each week thereafter, the Debtor will submit weekly reports to Senior Lender reflecting specifically:  (i) all revenues and other Cash Collateral collected during the previous calendar week; (ii) all disbursements made by the Debtors for the previous week; (iii) the balance of the Cash Collateral Bank Account (defined below) and reconciliation with the balances from the previous week; (iv) an accounts payable aging; and (v) a comparison of the actual amounts collected and paid during the previous week, with the budgeted collections and expenses (stated in the Budget).  The Debtors will respond promptly to any reasonable request for accountings or other financial information from Senior Lender and will permit inspection of its books and records, or the Senior Collateral by Senior Lender (or its representatives) upon three (3) business days' notice.

8.    **Cash Collateral Bank Account**.  The Debtors each will deposit all collections of revenues, rents, profits and all other Cash Collateral into one or more debtor-in-possession bank accounts as approved by the United States Trustee and held with Senior Lender (the "**Cash Collateral Bank Account**") and, to the extent comingled, shall ensure that each Debtor's Cash

Collateral deposited therein or spent therefrom can be traced and accounted for. The Debtors may withdraw funds from the Cash Collateral Bank Account only to make payments in accordance with this Order and the Budget. The liens and security interests held by Senior Lender in funds constituting Cash Collateral will continue notwithstanding deposit in each Cash Collateral Bank Account.

9. **Super-Priority Claim.** To the extent that (i) the protections granted to Senior Lender in this Order do not provide Senior Lender with adequate protection of its interest in the Cash Collateral, or (ii) any Senior Collateral is used by the Debtors and the Court (or any other court of competent jurisdiction, subject to the automatic stay) later determines that such Senior Collateral had been validly sold, subject to Senior Lender's senior liens and security interests, by any of the Debtors before the Petition Date such that the sold Senior Collateral is not property of the Debtors' estates, then Senior Lender is awarded a super-priority administrative expense claim (the "**Super-Priority Claim**") under Bankruptcy Code § 507(b) to compensate Senior Lender fully for the use of the Cash Collateral by the Debtors or the use of non-estate Senior Collateral, subject only to a carve-out for all unpaid United States Trustee fees.

10. **Taxes and Insurance.** The Debtors shall maintain and keep in full force and effect all insurance, endorsements and coverage for the Senior Collateral, in accordance with the insurance required by the Senior Loan Documents, and the Debtors shall provide to Senior Lender satisfactory evidence that all such insurance coverage is in full force and effect. The Debtors shall timely pay all post-petition taxes and shall provide to Senior Lender satisfactory evidence of such payment.

11. **Reservation of Rights**. Nothing in this Order will be deemed or construed as an admission or waiver by Senior Lender as to adequate protection, prior or future transfers of Senior

Collateral, the existence, validity or character of any purported loans or transfers of future receivables to an party, or any other issue in the Bankruptcy Case, and this Order will not constitute consent by Senior Lender to the use of its Cash Collateral other than for the limited purpose and during the limited period expressly provided herein. In addition, nothing contained in this Order will prejudice the rights of Senior Lender to: (i) seek relief from the automatic stay of Bankruptcy Code § 362(a); (ii) oppose confirmation of any plan of reorganization filed by any of the Debtors or any other party in interest; (iii) oppose approval of any postpetition financing; (iv) seek a dismissal of the Debtors' Bankruptcy Cases; (v) seek allowance of an administrative claim or additional adequate protection in connection with the use of the Cash Collateral or other Collateral; (vi) object to any proposed sale or transfer of any portion of the Collateral; or (vii) seek any other relief that Senior Lender may deem necessary and appropriate under the circumstances. Moreover, nothing contained in this Order will be deemed to waive or diminish any of Senior Lender's rights under the Senior Loan Documents.

12. **Notice**. Within two (2) business days after the entry of this Order, the Debtors will transmit by regular mail copies of this Order (as entered by the Court) to the Rule 4001 Recipients. The Court will hold a further hearing on final approval of financing provided in this Order on Jan. 4, 2024 at 10:00 a.m. at 660 N. Central Expy., Dallas TX  Courtroom 300B (the "**Final Hearing**"). All objections to this Order must be in writing and filed with the Clerk of the Court and served upon counsel for the Debtors and counsel for Senior Lender on or before December 29, 2023.

13. **Binding**. The provisions of this Order will be binding upon and inure to the benefit of Senior Lender and the Debtors and their respective successors and assigns, including but not limited to any trustee in bankruptcy hereinafter appointed as a representative of any Debtors'

estate. Notwithstanding anything to the contrary in this Order, the rights of parties-in-interest to challenge the extent, priority, and validity of Senior Lender's asserted liens in the Senior Collateral, or the amount and validity of the Senior Obligations are fully reserved, pending the final approval of the Motion at the Final Hearing. **DUE TO EMERGENCY CIRCUMSTANCES AND THE IMMEDIATE NEED OF THE DEBTORS TO USE CASH COLLATERAL, NOTWITHSTANDING THE PROVISIONS OF BANKRUPTCY CODE, BANKRUPTCY RULES, OR LOCAL RULES TO THE CONTRARY, THE SENIOR REPLACEMENT LIENS GRANTED IN THIS INTERIM ORDER SHALL CONTINUE NOTWITHSTANDING ANY RECONSIDERATION, MODIFICATION, AMENDMENT OR TERMINATION OF THIS INTERIM ORDER TO THE EXTENT OF THE USE OF CASH COLLATERAL OR THE DIMINUTION IN VALUE OF THE COLLATERAL PRIOR TO ANY SUCH RECONSIDERATION, MODIFICATION, AMENDMENT OR TERMINATION OF THIS INTERIM ORDER**

14. **Modifications**. Any of the requirements of this Order may be waived or modified by Senior Lender and the Debtors jointly in writing. Any motion or request by the Debtors or any other party to authorize the use of Cash Collateral, to modify the terms of this Order, or to obtain any other relief that would impair, adversely affect or alter the rights of Senior Lender under this Order will only be heard upon at least five (5) business days actual notice to Senior Lender's counsel of record. No subsequent stay, modification, termination, failure to extend the term of or vacation of this Order will affect, limit, or modify the validity, enforceability, or perfection of the Senior Replacement Liens granted to Senior Lender.

15. **Extension**. The Senior Lender and the Debtors may extend the Interim Period up to the date of the Final Hearing by filing a stipulation providing for the same, with an updated

budget for such extended period, in which case this Order, together with its authorization to use Cash Collateral and all protections (including Senior Replacement Liens) granted to the Senior Lender, shall continue through and extend to such extended period.

16. **Effective Date**. This Order will be effective immediately notwithstanding the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

SO ORDERED.

Dated: _____

Signed on 12/21/2023

*Brenda T. Rhoades*   SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**AGREED AS TO FORM AND CONTENT BY:**

/s/ Julian P. Vasek
Counsel for the Debtors

/s/ Jason Curry
Counsel for BMO

**Spartan Group - Cash Collateral**
**18-Dec-23**

| Week | 1 | 2 | 3 | 14-day |
|---|---|---|---|---|
| Date (Week Ending) | 12/15/2023 | 12/22/2023 | 12/27/2023 | |
| Budget/Actual | *Actual* | *Budget* | *Budget* | Budget |
| **Cash Flow** | | | | |
| **Receipts** | | | | |
| Customer Receipts (Existing A/R) | 50,733 | 8,650 | 3,129,551 | $ 3,188,934 |
| Customer Receipts (New Billings) | - | - | - | $ - |
| Customer Receipts (Retention & Change Order) | - | - | - | $ - |
| **Total Receipts** | 50,733 | 8,650 | 3,129,551 | $ 3,188,934 |
| **Disbursements** | | | | |
| Inventory | | | | |
| Direct Materials | - | - | 657,330 | $ 657,330 |
| Other Direct Materials | - | - | 27,664 | $ 27,664 |
| CGS | | | | |
| Concrete, Rebar & Related Materials | - | 269,230 | 471,050 | $ 740,280 |
| SCC – Thursday Pour | - | - | - | $ - |
| SR Work (Samsung) | - | - | - | $ - |
| Freight and material movement | - | 7,975 | 3,409 | $ 11,384 |
| **Total Inventory** | - | 277,205 | 1,159,453 | $ 1,436,658 |
| **Payroll & Related Expenses** | | | | |
| Fixed Payroll & Taxes | - | 33,183 | 163,355 | $ 196,538 |
| Prefiling Fixed Payroll & Taxes | | 283,985 | | |
| Direct Payroll & Taxes | - | 48,380 | 112,184 | $ 160,564 |
| Prefiling Direct Payroll & Taxes | | 254,718 | | |

EXHIBIT "A"

| | | | | |
|---|---|---|---|---|
| Subcontractors | - | | 179,816 | $ 179,816 |
| Health Insurance | 89,160 | | 45,874 | $ 135,034 |
| | | | | $ - |
| **Total Payroll & Related** | 709,426 | | 501,229 | $ 1,210,655 |
| | | | | |
| **Operating Expenses** | | | | |
| Insurance | - | | 203,926 | $ 203,926 |
| Sales Tax | - | | | $ - |
| Rent Buildings | | | | $ - |
| Engineering Layout Services (Advance Geo) | 6,560 | | 3,500 | $ 10,060 |
| Rebar Bender Software Shop (aSa) | 8,584 | | | $ 8,584 |
| Utilities, Internet, Phone | | | 4,811 | $ 4,811 |
| Prefiling Utilities, Internet, Phone | | | 4,676 | $ 4,676 |
| Cloud Server Data,Admin Software and Outside IT support | | | 46,876 | $ 46,876 |
| Office Expenses (FEDEX, Dig Print, etc) | - | | 278 | $ 278 |
| Direct Travel Expense | 4,784 | | 2,342 | $ 7,126 |
| Bank Fees | - | | | $ - |
| Repairs and Maintenance | - | | 978 | |
| **Total Operating Expenses** | 19,928 | | 267,387 | $ 287,316 |
| **Restructuring Professional Fees** | | | | |
| DIP Fee | - | | - | $ - |
| CRO Fees | - | | | $ - |
| Investment Banker | - | | - | $ - |
| Company Legal Fees (Restructuring) | | | - | $ - |
| Company Legal Fees (Liens and Claims) | | | - | $ - |
| International Legal Fees | - | | - | $ - |
| UCC Legal | - | | - | $ - |
| UCC Financial Advisors | - | | - | $ - |
| U.S. Trustee | - | | - | $ - |
| Claims Agent | - | | - | $ - |
| Independent Board Member | - | | - | $ - |
| **Total Restructuring Professional Fees** | - | | - | $ - |
| | | | | |
| **Cash** | | | | |

EXHIBIT "A"

| | | | | | | |
|---|---|---|---|---|---|---|
| Cash | 86,742 | - | | | $ | 86,742 |
| Remaining availability | 86,742 | - | | | $ | 86,742 |
| **Total Disbursements** | - | 1,006,559 | 1,928,070 | | | 2,934,629 |
| **Cash Flow** | 137,474 | (997,909) | 1,201,482 | | $ | 254,306 |
| **Cummulative Cash Flow** | 137,474 | (860,434) | 341,047 | | $ | 341,047 |